IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

**FILED**

**February 28, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-621

CHRISTOPHER HAYMOND, individually and as Trustee of the Testamentary Trust
created by the Last Will and Testament of Irene Nutter Haymond,
Defendant Below, Petitioner,

v.

STEPHANIE HAYMOND and DAVID HAYMOND,
Plaintiffs Below, Respondents.

Certified Question from the Circuit Court of Ritchie County
The Honorable Timothy L. Sweeney, Judge
Case No. 20-C-30

CERTIFIED QUESTION ANSWERED

Submitted: January 10, 2024
Filed: February 28, 2024

J. Nicholas Barth, Esq.
BARTH AND THOMPSON
Charleston, West Virginia

Robert S. Fluharty, Jr., Esq.
FLUHARTY AND TOWNSEND
Parkersburg, West Virginia
Counsel for Petitioner

Joshua S. Rogers, Esq.
Paige K. Vagnetti, Esq.
DINSMORE AND SHOHL, LLP
Morgantown, West Virginia

John R. Whipkey, Esq.
BLOCK AND ASSOCIATES, LLC
Pittsburgh, Pennsylvania
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.  "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.  "The paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Hemphill v. Aukamp*, 164 W. Va. 368, 264 S.E.2d 163 (1980).

3.  A trust beneficiary's attempt to transfer his or her interest in violation of a valid spendthrift provision is void ab initio.

WALKER, Justice:

When Irene Nutter Haymond created a testamentary trust for the benefit of her grandchildren, she included a spendthrift provision precluding them from alienating or encumbering their interests in the trust until the trust terminated. Even so, Petitioner Christopher Haymond – Irene Haymond's son and one of the co-trustees – convinced the two grandchildren-Respondent beneficiaries to transfer their interests in trust property to him in 1993. After the trust terminated twenty years later, Respondent beneficiaries brought an action against Petitioner trustee to quiet title and for damages and an accounting. In this certified question, we are asked to consider whether the attempted conveyances are void ab initio or merely voidable. We conclude that a settlor's intent in including a spendthrift provision and placing those restraints on the property must control and be given effect, and therefore render an instrument purporting to convey that interest in violation of a valid spendthrift provision void ab initio.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this certified question are undisputed. Irene Nutter Haymond had two sons, Daniel Haymond, III, and Petitioner Christopher Haymond. In her will, Ms. Haymond created a testamentary trust to which she devised approximately four hundred acres of real property located in Ritchie County, West Virginia, together with the underlying mineral rights, for the benefit of her grandchildren. The trust allocated fifty percent to the children of her son Daniel and the remaining fifty percent to the children of her son Christopher. Her sons were to act as trustees and pay the beneficiaries the income

1

of the trust until such time as the youngest grandchild-beneficiary turned thirty, at which time the trust would terminate and the principal would be distributed to the beneficiaries in their respective shares. Significantly, the trust contained a spendthrift provision stating, "[t]he interest of beneficiaries in principal or income shall not be subject to the claims of its creditors or others nor to legal process and may not be voluntarily or involuntarily alienated or encumbered."

In 1993, while Petitioner was still acting as co-trustee, he prepared deeds and presented them to his daughter, Respondent Stephanie Haymond, and his nephew, Respondent David Haymond, requesting that they transfer their respective interests in the real property held in trust to him. Respondents signed the deeds, and Christopher paid his daughter $100 in consideration and his nephew $3,000. The trust terminated in February 2014. The Respondent beneficiaries did not execute any instrument purporting to transfer their interest after the trust's termination.

In 2020, Respondents brought an action for declaratory relief and to quiet title (Count I), sued Petitioner for breach of trust, conversion, and unjust enrichment (Count II),[1] and demanded an accounting of receipts, expenses, and distributions associated with

---

[1] Though not at issue for purposes of this certified question, Respondents alleged in their complaint that Petitioner had leased the mineral rights while serving as trustee and received payments that were payable to the trust that were never paid into the trust.

2

the trust (Count III).[2]  Respondents filed a motion for partial summary judgment on the pleadings as to Count I, contending that because the purported conveyances to Petitioner were made in violation of the trust's spendthrift provision, they were void ab initio. Petitioner contends that the conveyances are merely voidable, and that the statute of limitations and/or the doctrine of laches now precludes Respondents from voiding the deeds.

Based on those arguments, the circuit court certified two questions.  First, it asked, "is a transfer by deed of real property in violation of a spendthrift clause void ab initio or merely voidable?" And, if merely voidable, "were the Plaintiff[s] required to institute a civil action asserting their claims that such deeds were void within a certain period of time following their execution and delivery of such deeds to the Defendant?" The circuit court answered the first question by finding that a transfer by deed of real property in violation of a spendthrift provision was void ab initio.  And should this Court conclude that the transfer was merely voidable, the circuit court determined that the civil action should be commenced "within the period of time provided by the factually appropriate limitation of actions provisions, if any."

---

[2] Daniel Haymond, III, Petitioner's co-trustee, died in 2013.

3

## II.    STANDARD OF REVIEW

Like other questions of law, "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."[3]

## III.    ANALYSIS

The certified questions posed accept the underlying premise that the Respondent beneficiaries of the trust were subject to a valid spendthrift provision and that these conveyances were made in violation of that provision. Still, Petitioner's primary argument runs counter to that premise, as he contends that as a matter of public policy, a spendthrift provision may not be applied to restrict the alienation of real property. Stated differently, Petitioner contends that a spendthrift provision may not be enforced to void conveyances of real property, so that the conveyances at issue in this case cannot be void ab initio. We address that threshold issue first.

Spendthrift trusts have long been recognized by this Court as those "created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection."[4] But to create a spendthrift trust we have not deemed it necessary that the beneficiary be denominated a

---

[3] Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

[4] *Hoffman v. Beltzhoover*, 71 W. Va. 72, 74, 76 S.E.2d 968, 969 (1912) (quotation and citation omitted).

"spendthrift" or that the testator or donor give the reason for creating it.[5] In 1993, the Legislature codified the common law relative to spendthrift trusts at West Virginia Code § 36-1-18:

> Estates of every kind in real or personal property, holden or possessed in trust, shall be subject to the debts and charges of the persons to whose use or for whose benefit they are holden or possessed, as they would be if those persons owned the like interest in the things holden or possessed, as in the uses or trusts thereof; but where the creator of the trust has expressly so provided in the instrument or conveyance creating the trust, real or personal property may be held in trust upon condition that the income therefrom shall be applied by the trustee to the support and maintenance of a beneficiary or beneficiaries of the trust in being at the time of the creation of the trust, other than the creator of the trust, for the life of such beneficiary or beneficiaries, without being subject to the liabilities of, or alienation by, such beneficiary or beneficiaries.

That provision was in effect at the time of the purported transfers and remained in effect until 2011 when the Legislature adopted the West Virginia Uniform Trust Code. Though different in form, West Virginia Code § 44D-5-502 does not differ fundamentally in substance: "[a] beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision, and, except as otherwise provided in this article, a creditor or assignee of the beneficiary may not reach the interest or distribution by the trustee before its receipt by the beneficiary."

---

[5] *Id.*

Despite that the 1993 statute specifically refers to real property interests as subject to spendthrift provisions and that the West Virginia Uniform Trust Code likewise permits spendthrift provisions to apply generally to "an interest in a trust," Petitioner argues that public policy prevents spendthrift provisions from limiting the alienation of real property by beneficiaries. Specifically, Petitioner argues that this Court's 1922 decision in *McCreery v. Johnston*[6] stands for the proposition that spendthrift provisions are unenforceable against real estate interests because such restrictions on alienation are against public policy.

In *McCreery*, the Court invalidated a spendthrift provision that *indefinitely* precluded alienation of real property, articulating that "[i]t must be borne in mind that all restraints upon alienation are against the policy of our law."[7] But in doing so, the *McCreery* Court reinforced that spendthrift provisions are the *exception* to that public policy and are enforceable "to the extent that they are necessary to accomplish some purpose which justifies a departure from such policy."[8] In dicta, the Court clarified that had the restraint on alienation been limited to the beneficiary-son's lifetime it would have been enforceable,[9] and explained that the "rule against restraints" gives way to the right of the

---

[6] 90 W. Va. 80, 110 S.E. 464 (1922).

[7] *Id.* at 84, 110 S.E. at 465.

[8] *Id.* at Syl. Pt. 1, in part.

[9] *Id.* at 85, 110 S.E. at 466.

owner of real estate to dispose of his or her property for the purpose of protecting the person for whom the trust is created:

> There are, of course, limitations upon this rule but they are carried no further than the necessity of the occasion warranting them requires. One of the exceptions in this jurisdiction, and in most other jurisdictions in this country, is that an owner of property may create what is popularly called a spendthrift trust for the benefit of some improvident relative or friend. . . . the right of the owner of property to dispose of it in such a way that will secure a maintenance to an improvident or impecunious relative, and save him from the effect of his own prodigality is firmly established in this state by our decisions.[10]

The enactment of West Virginia Code § 36-1-18 and later the codification of the Uniform Trust Code found in West Virginia Code § 44D-5-502 reinforce the validity of spendthrift provisions as applied to interests in real property and support the position espoused in *McCreery* that spendthrift provisions are valid restraints on the alienation of interests in real property held in trust.[11] For those reasons, we reject Petitioner's contention that the deeds cannot be void ab initio because the spendthrift provision may not be enforced to prevent the alienation of real property.

Having clarified that spendthrift provisions may properly be applied to prevent the transfer of equitable interests in real estate, we turn to the effect of the attempted

---

[10] *Id.* at 84, 110 S.E. at 466.

[11] We emphasize that the trust at issue did not place restraints against alienation of the *legal* title to the property by the trustees, only the equitable interests of the beneficiaries.

7

transfer. Petitioner argues that as trustee, he may approve transfers proposed and agreed to by beneficiaries. According to Petitioner, that those transfers were made to him at his behest while acting as a co-trustee makes them merely void*able*: "[a] party holding a fiduciary relation to trust property can not either directly or indirectly become the purchaser thereof, without rendering the sale voidable, at the mere pleasure of the beneficiaries[.]"[12]

But Petitioner's argument focuses too narrowly on to *whom* the conveyances were made, i.e., a party like himself, who "[held] a fiduciary relation to trust property," where the voidability is premised on the potential for fraud and undue influence. In view of a valid and enforceable spendthrift provision, regardless for the potential for fraud or undue influence, *any* conveyance to *anyone* would have been void. While the trust in this case gives the Petitioner trustee the authority to convey or otherwise encumber the trust property for the benefit of the Respondent beneficiaries (such trust bearing the *legal* title to that real property), it specifically does *not* permit the Respondent beneficiaries to transfer their *equitable* interest in either the principal or the income: "the interest of beneficiaries in principal or income shall not be subject to the claims of its creditors or others nor to

---

[12] *Gilmore Mfg. Co. v. Lewis*, 105 W. Va. 102, 110, 141 S.E. 529, 532 (1928); *see also* Syl Pt. 6, *Work v. Rogerson*, 152 W. Va. 169, 160 S.E.2d 159 (1968) ("Where a fiduciary while actually holding such relationship acquires interest in property from a sale thereof, such sale is voidable although the fiduciary may have given adequate consideration and gained no advantage whatsoever."); *Newcomb v. Brooks*, 16 W. Va. 32, 59 (1879) ("a purchase by a trustee, or party holding any fiduciary relation, of the trust-property or subject, although he may have given an adequate price therefor and gained no advantage whatever, is voidable at the pleasure of the *cestui que trust*, or party to whom such confidential relation is borne by the purchaser[.]") .

legal process and may not be voluntarily or involuntarily alienated or encumbered." By its plain terms, the spendthrift provision precluded the transfer of the Respondent beneficiaries' equitable interests in the principal, and they had no legal title to transfer until such time as the trust terminated.[13]

Petitioner argues that the conveyances should be voidable at the election of the beneficiaries, but a beneficiary ill-advisedly consenting to a conveyance of their interests is a primary purpose of a spendthrift provision. The effect of an attempted transfer must then be void ab initio. To find the conveyance voidable would place the balance of the effectiveness of the deed on the terms and circumstances of the transaction itself, be it voidable for fraud in the inducement, mistake, or the like. But the effectiveness of the transfer cannot be placed in the presumably injudicious hands of the beneficiaries when the settlor of the trust forbade them, in their vulnerability, to make any kind of transfer under any terms. The settlor predetermined that those transfers would be presumptively imprudent and, accordingly, constrained the capacity of the beneficiaries to make those transfers from the start.

We have held that "[t]he paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive

---

[13] As noted above, Respondents did not re-execute deeds to transfer interests after the termination of the trust.

9

rule of law or principle of public policy."[14]  And, as we have established, the settlor had every right to restrain her property for the benefit of her grandchildren by preventing them from transferring their interests until such time as the trust terminated and their legal title vested.  It is contrary to the intent of the settlor in including such a provision to render an attempted sale as merely voidable.

Consistent with the logic we apply here, commentators recognize that "[a] beneficiary's attempted transfer of her interest under a spendthrift trust is generally treated as void[.]"[15]  The United States Court of Appeals for the Tenth Circuit likewise succinctly stated that "[t]he rule is well settled that an attempt to alienate the interest of a beneficiary of a spendthrift trust is void and unenforceable[.]"[16]  It founded that conclusion on the prerogative of the settlor to set terms, not the wishes of the beneficiary or the interests of third parties:

> [t]he doctrine of spendthrift trusts rests upon the right of a donor to give his property to another upon such conditions and restrictions against alienation as he shall see fit. As the property does not belong to the donee prior to the creation of the trust, and after the creation of the trust the donee's interest is subject to the conditions attached by the donor, creditors or transferees

---

[14] Syl. Pt. 1, *Hemphill v. Aukamp*, 164 W. Va. 368, 264 S.E.2d 163 (1980).

[15] Myron Kove, George Gleason Boger, George Taylor Bogart, BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 226 (2023).

[16] *Johnson v. Morawitz*, 292 F.2d 341, 343 (10th Cir. 1961).

10

of the donee have no right to rely upon it for the satisfaction of their claims.[17]

Attempts to alienate interests in violation of a spendthrift provision are thus void ab initio: "when it is clear that the testator intended to create a spendthrift trust the court will not permit a beneficiary to dispose of the trust property or any part thereof in contravention of the terms of the will."[18]

Prevented from transferring their equitable interests by the explicit terms of the spendthrift provision, and having no legal title to convey, the Respondent beneficiaries here could not validly execute a deed transferring their interests. The instruments purporting to transfer those interests before the trust terminated and vested in them legal title are, and were always, void. Attempted transfers by beneficiaries in violation of a spendthrift provision are similarly void from a statutory viewpoint. West Virginia Code § 36-1-18, in effect at the time of the attempted transfers, provided that real property may be held in trust with the constraint that its alienability by the beneficiary is forbidden. More pointedly, language of West Virginia Uniform Trust Code § 44D-5-502, in effect during the life of the trust and now in effect, *prohibits* a transfer: "[a] beneficiary *may not* transfer an interest in a trust in violation of a valid spendthrift provision."[19]

---

[17] *Id.* at 344.

[18] *Id.* at 345.

[19] Emphasis added.

11

That the Respondent beneficiaries would later acquire title at the termination of the trust cannot serve to cure the void conveyance. Importantly, this Court has reiterated that "a deed once void is always void."[20] We see no reason to alter that rule here in view of the equitable doctrine of after-acquired title.[21] The doctrine of after-acquired title – better termed estoppel by deed – has been explained by this Court as the proposition that "where a person conveys land by deed of general warranty, and has at that time no title, or a defective title thereto, and thereafter acquires perfect title, he is estopped to assert the title thus acquired against his former conveyance."[22]

We observe that real property subject to a spendthrift provision was necessarily conveyed by the settlor by deed to a trust and held – as a matter of public record – in the name of the trust, not the beneficiaries. Since "[o]ne cannot be heard to say that they did not know of matters which were open, obvious, and of public record[,]"[23] the doctrine of after-acquired title is ineffectual to cure a void deed executed in violation of a valid spendthrift provision:

> [t]he doctrine of after-acquired title is predicated upon the idea
> that an uninformed grantee should not be penalized if the

---

[20] *Heavner v. Hess*, No. 21-0558, 2022 WL 4355106, at *17 (W. Va. Sept. 20, 2022) (memorandum decision).

[21] We discuss the doctrine of after-acquired title in order to fully address the certified question and in doing so do not intend to imply that the doctrine would apply to the deeds executed in this case but for the spendthrift provision.

[22] *Wellman v. Tomblin*, 140 W. Va. 342, 345, 84 S.E.2d 617, 619 (1954).

[23] 58 Am. Jur.2d *Notice* § 13 (2024).

12

> grantor did not own the property at the time of the conveyance yet subsequently acquired it; conversely a grantee who is misled through his or her own want of reasonable care and circumspection may not rely on the doctrine because estoppel is denied where the party claiming it was put on inquiry as to the truth and had available means for ascertaining it.[24]

An unrecorded deed from settlor to the trust fares no better, since a simple title search would expose that the beneficiaries have no title to convey.

Moreover, the equity-based doctrine of estoppel by deed cannot provide a workaround to validate a deed that the Respondent beneficiaries not only lacked the legal *title* to convey, but also – and crucially – lacked the *capacity* to convey. As we have established, the spendthrift provision broadly stripped the Respondent beneficiaries of the authority to alienate or encumber their interests in the principal (the realty) in any way, which would plainly encompass a conveyance purporting to transfer anticipatory legal title to the principal prior to the termination of the trust. To validate the then-prohibited conveyance on the basis that the Respondent beneficiaries would eventually receive legal title would skirt the spendthrift provision. In doing so, it would vitiate the intent of the settlor by permitting the Respondent beneficiaries to indirectly convey through operation of estoppel that which they were forbidden to directly convey as a matter of law. We are thus unpersuaded that estoppel by deed has a place here where the settlor's restraints on the real property placed in trust – and not the beneficiaries' warranties of good title – carry

---

[24] 23 Am. Jur.2d *Deeds* § 278 (2024).

13

the day.  For the reasons set forth above, we now explicitly hold that a trust beneficiary's attempt to transfer his or her interest in violation of a valid spendthrift provision is void ab initio.

## IV.   CONCLUSION

We answer the certified question posed by concluding that transfers by deed in violation of a valid spendthrift trust are void ab initio and for that reason we need not answer the second question.

Certified Question Answered.